Please call the next case for argument. The next case for argument is 21-1263 Eastern Arkansas Primerica Life Insurance Company v. Ila Reid. I don't have Mr. Putman on my screen. Hopefully you do now or will momentarily, Your Honor. There we go. Well, Mr. Putman, we're ready if you are. Thank you, Your Honor. As the court knows, this is the second time this matter has come up on appeal. This matter arose from an interpleader action filed in the Eastern District of Arkansas. The original set of issues before that court were involved entitlement to proceeds of a life insurance policy. Primerica interpled those proceeds on the ground that it was facing multiple colorable claims, and it left it for the district court to sort that out. The district court determined that my client, Ila Reid, was entitled to those proceeds, but the court also determined, granted Primerica summary judgment on Ila's counterclaim for breach of contract. That was the issue the first time the case came up on appeal. Ila argued that Primerica acted with unclean hands and had caused the controversy that led to the competing claims, and therefore it was not entitled to protection from liability. We urged the court at that time to embrace the rule that was articulated in the Hovis case out of the Third Circuit, and while this court was generally sympathetic to Hovis, it elected not to adopt that case wholesale, but rather to adopt the standard, saying that in an interpleader action, the question is whether the stakeholder acted unfairly to create the controversy at issue and led to competing claims being asserted, and it's the position of my client here, Your Honors, that Primerica did act unfairly and in multiple ways at multiple times. I think the easy way for me to think about this case, and hopefully for you all, is to think of it in two phases, what happened before Garvin Reid died and what happened after he died. Before Mr. Reid died, and he passed away in August of 2016, he had taken out this life insurance policy, and at the time he took it out, his first wife, Betty Jo, was his beneficiary. In October of 2001, he reached out to Primerica to find out who his named beneficiary was. When he found out it was still Betty Jo, he took steps to change that, and what Primerica did at that point is send him a multi-purpose change form with a cover letter instructing him to provide certain information, sign the form, comply with the instructions, and send it back in, which there's no controversy here. That's exactly what Mr. Reid did. However... Counsel, let's suppose that Primerica engaged in all sorts of negligent behavior here. This is kind of a long question, so bear with me. At least one federal district court, the Southern District of New York, has stated that mere negligence on the part of the stakeholder does not bar interpleader, even if the controversy has resulted quite directly and foreseeably from that negligence. Now, in contrast, the District of Nebraska held a U.S. versus Hughes ranch that negligent conduct might amount to inequitableness in some cases. So that kind of presents a difficult question for us, but the Supreme Court held in precision instrument manufacturing, it's an old Supreme Court case, that there's no formula for determining whether an action is unfair or inequitable, and there's wide discretion in the court in the matter. So my question is, why isn't this an area where we should defer to the determination of the district court in the absence of an abuse of discretion? Well, two reasons, Your Honor. I think that the district court just simply got the analysis wrong. The district court did not, for reasons stated in the brief, apply the standard that this court articulated in the way that my client believes it should be applied. But moreover, I think in this case, applying the standard that this court has articulated, you can find multiple examples not of negligence, but of intentional conduct that should have, where Primerica should have acted differently based on the information and the documents that it had. I certainly agree that, you know, these types of cases are cases where the individual facts make a big difference, and I would also agree that there can be cases where mere negligence would rise to the level where the stakeholder should not get the benefit of negligence. This is not where someone made an innocent mistake or transposed numbers or did something that was understandable and excusable. We have multiple instances throughout this case where Primerica acted unfairly in the way that it handled the claim and breached its duty. Now, I'd like to talk about what happened in the fall of 2001 and then in 2002. Over a period of months, Mr. Reed took action. Before you get to that, correct me if I'm wrong, but doesn't your client have some fault here in the sense that when they initially filled out the form, they filled it out under the change of name rather than the change of beneficiary section? No, Your Honor, and for a couple of reasons. Most of those who've been articulating the brief, one that really jumped out at me as I was preparing for this argument was one I don't think I articulated as clearly as I could have and should have in the brief, and that is it makes absolutely no difference in this case whether Betty Jo and Ida Lane were the same person with a name change or two different people. It has absolutely no impact on the beneficiary designation, and it would have had absolutely no impact on the way Primerica should have been. The beneficiary designation, Ida Lane Reed, is what governs how the proceeds of this policy were to be distributed. To take a hypothetical example, my name is William Benjamin Putman. That was my father's name. It's also the name of my older son. My son could wake up tomorrow and decide he doesn't want to be William Benjamin Putman anymore. He wants to change his name and have his own identity, so he could go to the courthouse, file a petition, get an order entered changing his name to Stephen Michael Putman. If I go to my life insurance company and say I need to change my beneficiary, does it matter whether William Benjamin Putman, my son, and Stephen Michael Putman are the same person? No. The beneficiary designation... Counsel, even assuming that argument, it seems to me that the failure to answer Primerica's request for clarification of an ambiguous submission was as a butt formatter, created the ultimate controversy. Yeah, I disagree with that for several reasons. One being, as I've articulated, the beneficiary designation was made clear. Mr. Reed provided the information needed. He complied with what the letter said that he needed to provide, and also what an adjuster from Primerica, Linda Allison, said in her deposition. That was all that Primerica needed in order to change the beneficiary designation. But I must also take issue with the premise that Mr. Reed failed to respond to the letter. There's a letter in the record. There's no indication he ever about it. I think it's counterintuitive to suggest that after Mr. Reed started in October of 2001 and went through April of 2002 to make this change... Let me stop you there because I thought about this. There is no claim in the brief that whether ILA and whether the Reeds received that letter or not was a genuine issue of material fact. This case was decided, I believe, on cross motions for summary judgment, and the district court assumed from the records and the common assumption that mail is delivered made an assumption and decided the case on that assumption, and you didn't challenge that. So to me, your reference, and you can respond, your reference to, well, there's no evidence we got the letter is simply irrelevant to the appeal. Well, I agree from the standpoint of what was for the district court, your honor, and that's certainly not the argument. What's raised on appeal? You want us to not only remand, you want us to remand with directions to just tally up the damages for a misconduct under insurer misconduct. That's a demand for summary judgment on appeal. That's correct, your honor. So there is no issue of whether the district court assumed a genuine issue of disputed fact? I point that out, your honor, in the brief, but it is not what I'm basing my argument on appeal on. One of the, but you just did, you know, that's what you just said. I mean, point two is we didn't get no evidence. We got the letter. Well, that was intended to be my introductory comment before I got to the more substantial part of it. I agree with your honor. I'm happy to drop that part of the argument because for reasons that I've stated in the brief and in the first part of this argument, I don't think it matters. Mr. Reed provided the information that was provided that was required. And I also, your honor, should point out that in January of 2017, when Primerica was reviewing this file, there are notes in the file where one of the adjusters or the analyst, whatever position that person had said that letter should never have been sent. We didn't need the document regarding a name change. That wasn't the issue. So the whole idea of not responding to a letter that was immaterial and by Primerica's own admission should not have been sent is not a basis for deciding that summary judgment should be granted. It strikes me as certainly a basis for, it's certainly relevant to the question of whether we're only dealing with I wanted to reserve four minutes for rebuttal. So unless the court has further questions, I guess I'll stop at this point. Very good. Ms. Carson. Good morning, your honors. May it please the court. I am Stacy Carson and I represent Primerica Life Insurance Company. Your honors, the district court's decision was a correct one. Primerica has clean hands in this case. Primerica's conduct was fair. This case is not really about fault. It's not about whether Mr. Reed was at fault. It's not about whether Primerica was at fault. It's not about whether one's fault is greater or less than the other one. It is about whether Primerica's conduct rises to the level of being misleading or dishonest. The type of conduct that amounts to fraud, deceit, unconscionability. Where are you getting that standard? I don't know that we have any Eighth Circuit precedent on that. We do have the District of Nebraska saying that negligent conduct might amount to inequitableness in some cases. Your honor, I get that standard from the Bellevue case. This court cited the Bellevue case in its opinion and the district court relied upon the Bellevue case. As you all know, the Bellevue case No, wait a minute, counsel. I've just read Bellevue and the district court cited it for general principles of equity and that's about all that's relevant for it. It involves such a totally different fact context that it sheds no light on the proper standard for deciding this case in my view. I think it could, your honor. I think that the court focused there on the affidavit that the bondholder presented and, as you know, said in it that the the bond company had never issued more than one bond. I didn't want a dissertation on the facts at Bellevue. Okay. Do you have any other basis for your answer to Judge Strauss's question? You recited a very specific fraud and bad faith oriented standard and he asked you where do you get that from? Sure, your honor. The other location for that, the language of that, is the William Penn case. And I think that maybe, Judge Strauss, you mentioned that or some language from that case previously in Mr. Putnam's argument. The William Penn case is rather strong in your favor. It's just that it's not circuit authority and we do have Nebraska district authority the other way. Understood, your honor. But we believe, Primerica believes, that that is the way court should construe the standard here. The court, in its previous opinion, said that it should be an equitable standard, that the stakeholder did not have to be blameless. And so to define the parameters of what unfair conduct means, which is what this court said, that Mr. Putnam and his client would have to prove that Primerica acted unfairly, there has to be some context to that. And so in reading the Bellevue case and how the court construed the actions of the bondholder there, and then also in reading the William Penn case, I come to the determination that the conduct, to be unfair, would have to be misleading or dishonest. It would have to be something, some type of conduct, that would rise to the level of some fraud, deceit, unconscionability, or bad faith on the part of the stakeholder here at Primerica. So that is what, when the court talks about fault in this context, that is what we believe it meant. We believe that's the standard the court established in Primerica 1 and the As I pointed out, this court determined that the stakeholder did not have to be blameless. The district court determined that Primerica made errors. It similarly determined that Mr. Reed made errors. However, it determined that the errors that were made by Primerica were not the type of equitable conduct that negates interpleader protection. And so, your honors, Primerica was entitled to summary judgment both the first and second time that it was granted to it, and we are asking the court to affirm the district court's ruling, which dismissed the counterclaim with prejudice. Going back to some of the facts of the case, I know the court, this is the second time the I will just recite some of what I think are important points about that. Primerica issued the policy in 1986. As Mr. Putnam pointed out, Betty was the beneficiary. They divorced in 1992. He remarries Isla in 1993. In 2001, he requests, who is the beneficiary of my policy? He's told it is Betty. He requests the change form in 2002. He sent the change form. He returns it in April of 2002. And as Judge Bruder pointed out, there was an issue with how it was completed. I think we're familiar with the facts, and the district court made a finding that both sides were at fault. So it kind of takes us back in a circle to, well, what's the standard for unfairness and inequitableness? I guess you've addressed that with Southern District of New York case law, and we have to decide whether that applies. Correct. Correct, your honor. How about Mr. Putnam's argument, though, that his client really isn't at fault? Once the change of name form, no matter how it was filled out, clearly said Isla Elaine. It should be a no-brainer from that point forward. What's wrong with that argument? Well, for one thing, I would have to agree with Judge Loken's analysis of the concession of the point that it was received. But I would also point out- That's the follow-up letter question, right? Right. But what's wrong with his argument that once we submitted the name change, Isla Elaine, there should be no question that that's the beneficiary? Well, the problem is that's not what the facts hold. The name change section was completed, and at least in terms of how ProAmerica analyzed it back in 2002, it had some concern or confusion over whether or not Isla was changing her name to Betty or what Mr. Reed's intent was for looking at that section of the form and then looking at other sections. It was not sure what he wanted to do, and in my view, did the prudent thing, which was to ask him to provide more information to ensure that it got it right. And so then we come to the next question, which is the letter and the situation about responding to that letter. And I apologize. I put the cart before the horse there with my response earlier. But with respect to it, the address that it was sent to, Your Honor, was the address that they lived at. The previous notices had been sent to that same address, and I would point out factually that Miss Reed, Isla Reed, was not the one that would have received the mail. The testimony reflects it would have been Mr. Reed. And there's nothing in the record to suggest Mr. Reed did not receive the letter. Counsel, is it proper to make those inferences on summary judgment in favor of the primary? Well, Your Honor, I don't think we go there or we ever get there. I don't think you have to make those kind of inferences because I think the point is conceded. I wanted to point it out just simply because it was a question raised and it is some fact information that's in the record. Judge Loken, I know you didn't want a dissertation of the Bellevue case earlier, but I have five minutes left and I'd just like to hit this point about the standard, if I could, in using my five minutes. No, I'd like to use your five minutes on something else. Let's come forward quite a few years to the immediate cause of the controversy. It seems to me without studying the facts as I may ultimately need to do, but Agent Wood seems to me to be the real villain here. If he hadn't messed around with confusing instructions and inquiries and whatnot. So was there any, was there briefing and argument to the district court as to whether if Woods was at fault in creating the controversy, who wins and who loses? The question about your briefing is, I don't think that was a highlighted point. It wasn't addressed at all. If I go back and study that, and of course that lawyers don't like to put their arguments to the district court and the CMECF, so it's often hard to find. But what was argued to the district court with respect to the role that Woods played and its relevance to the fault question? I think they argued a much maybe more tempered version of what was put in their brief this time around. The last time, I don't think that was. Okay, if they argued Woods was your agent, so whatever he did was your fault. What was your response? I'm assuming that I would be surprised if they didn't argue that. What was your response on this question of fault under the standard that we're wrestling with? Right, yeah. Well, my response was that Mr. Wood was not a villain. I did not view him as not a villain. You used the term villain, that he was the real villain here. Wait a minute, your argument on the standard is that there has to be a villain, it's not just enough to be negligent. Right, I don't view him as a villain. Wait a minute, I'm trying to get at what you argued and what you argue now. I didn't see anything in your brief and very little in the other brief about the significance of Woods' role and any errors he made on this question of which of the applying a new difficult standard. I'm just trying to get what, where do I look or what do I, if you haven't argued it before, how do you argue it today? Well, it's in the, I believe it's in the briefs before the district court and I don't believe Mr. Wood made any errors, Judge Loken. But aren't the findings to the contrary? When the court said both sides made errors, it was only looking at the initial exchange of letters? No. It was talking about all the communications that brought Betty Jo and her lawyer into this and so forth. There are more errors late in the game than there were early in my view. I did not, I don't believe the district court referenced any of that in its decision. That's why I wanted to get at your position, either in the past or today. I mean, if you just say he didn't make any errors, okay, well. Well, I was going to explain what he did do to try to illustrate how he didn't. Don't give me facts. I want to know the agency basis. Is Woods and the way he fulfilled his role, does that make him Primerica or its alter ego under this difficult interpleader eligibility standard? I don't understand your question, Judge Loken. Okay, okay. If you're asking me if he is an agent of the company, yes, he was an agent. But when companies are held liable for the acts of their agents, probably fills a restatement volume. And now we're applying it in a context that's new and different. I would have expected counsel both sides to pay more attention to it, but you didn't. I wanted to see if there was anything to add this morning. I would just add, Your Honor, that we don't believe Mr. Wood made any errors here. I think that the errors that the district court was focusing on had to do with the beneficiary change. And then, well, I think that's all it referenced in its order. My time is up. I would just conclude by saying that the conduct of Primerica here was not unfair. And we would request that the court affirm the district court dismissing with prejudice, misreads, counterclaim for breach of contract. Thank you. Very good. Thank you. Mr. Putnam, do you have any time? Yes. Mr. Butler? Starting with Agent Wood, the role of Agent Wood in causing this controversy is addressed in both ILA's opening brief and in the reply brief. I'm looking here, I think, pages seven, eight, and nine of the reply brief go into some detail in Agent Wood's actions and why he wasn't negligent, but acted wrongly. You know, when Garvin died, Primerica knew enough to send the claim packet originally to ILA. That's what happened. When the process was initiated, the claim packet was put together and mailed to ILA Read. It wasn't until Agent Wood intervened and insisted that Primerica had it wrong that there was a claim packet prepared and sent to Betty Jo six days later. The problem was with Agent Wood that he acted out of ignorance, not just out of ignorance, but he was belligerently ignorant. He was told, as Primerica's own notes reflect, that there was a change of beneficiary form and that ILA Read was designated his beneficiary. Wood knew that ILA and Garvin had been married for 23 years. He was told there was a change of beneficiary form filed, and yet, over a period of several days, he continued... Counsel, wait a minute. Wait a minute. I understand all that. My question went to your authority, which is that there's nothing in the pages. I'm looking at your reply brief. There's nothing about authority establishing that this conduct of Wood's, whether negligent or worse, is attributable to Primerica for this case. And, of course, Primerica didn't have a chance to reply brief. So I'm looking at this as a question of law, which is what we do. He acted at all times... Do you folks want to run away from the law and just tell us about facts we knew? Your Honor, at all times relevant to this case, John Wood acted as an agent of Primerica. I did not address that particular issue in detail because I didn't think it needed to be. There's no question that he was their agent. There's no question that he acted as their on behalf of Primerica at all times. He was the one communicating with the company and insisting they send the claims packet to Betty Jo. I mean, again, I don't recall... He was trying to be helpful to the beneficiary. He was trying to be helpful to who he thought the beneficiary was, but he was wrong. And he refused to acknowledge the possibility that he was wrong, even after being told he was wrong. It was his... In that action, why isn't he an independent player? Because he's acting in his role as agent. He's not off the reservation doing something that is not within the scope of his duties as an agent. He's trying to help... Well, I'll go to the restatement of agency and see what it has to say about this. I think it's not nearly as simple a question as you suggest. Okay. I appreciate that, Your Honor. In regard to the other conduct, Primerica filed this interpleader action more than eight months after Garvin died and the initial claim packet was sent out. At that point in time, they had multiple opportunities to review the record, look at the beneficiary designation, and determine not only that Isla was the proper beneficiary, but that the only reason that Betty Jo made a claim was because of Agent Wood. She didn't think she was entitled to that money. It never occurred to her that she'd still be the beneficiary. But once Wood intervened and she was sent a claim packet, she decided she needed to pursue her claim. Again, Your Honor, for reasons stated in the brief, I think there are multiple indications here that Primerica acted unfairly, and unfairly is the standard that this court articulated in Primerica Read 1. It's not a fraud standard, and it's a very fact-specific determination, and I believe the facts show there was unfairness on Primerica's part, and that the trial court granted the summary judgment motion of Primerica in error. Thank you, Counsel. The case has been effectively briefed and argued, and we will take it under advisement. Thank you, Your Honors. Thank you.